No. CV-25-7977

# In the United States Court of Appeals for The Ninth Circuit

PHILLIP POTTER,
*Plaintiff - Appellant,*

v.

ROBERT MEZA, in his private capacity; KARRIN TAYLOR ROBSON, in her private capacity; ALANE ORTEGA; KRISTIN K. MAYES, in her official capacity as Arizona Attorney General; JOSEPH WELTY, in his official administrative capacity as former Presiding Judge of the Maricopa County Superior Court; and PAMELA GATES, in her official administrative capacity as Presiding Judge of the Maricopa County Superior Court,
*Defendants - Appellees*

Appeal from the United States District Court
for the District of Arizona
Honorable Dominic W. Lanza
(2:25-cv-00663-PHX-DWL)

**APPELLANT'S OPENING BRIEF**

Phillip Potter
2301 N. 66th Street
Scottsdale, AZ 85257
480-459-0310
phillip.t.potter@gmail.com
Pro Se Plaintiff - Appellant

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION ..................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 3

ISSUES PRESENTED .............................................................. 3

STATEMENT OF THE CASE ...................................................... 4

  I. Statutory Background ......................................................... 4

  II. Factual Background ........................................................... 7

  III. Procedural Background ..................................................... 9

STANDARD OF REVIEW ......................................................... 14

SUMMARY OF ARGUMENT ..................................................... 15

ARGUMENT ......................................................................... 18

  I. The District Court Erred When It Denied Injunctive Relief
    Involving Arizona Attorney General Kris Mayes ..................... 18

    A. Plaintiff Has Standing To Sue Attorney General Mayes ...... 19

      1. Legal Standard ............................................................. 19

      2. Plaintiff Suffers Pre-Enforcement Injuries
        In a First Amendment Case ............................................ 19

        a. Plaintiff Meets *Driehaus* Factor One ......................... 20

        b. Plaintiff Meets *Driehaus* Factor Two ......................... 20

        c. Plaintiff Meets *Driehaus* Factor Three ....................... 22

3. Traceability and Redressability Are Met ........................................ 24

4. Attorney General Mayes Has No Sovereign Immunity ................... 25

5. Conclusion ................................................................................ 25

B. The District Court Erred To Deny Injunctive Relief On The Merits .. 26

   1. Factor One: Plaintiff Is Likely To Succeed On The Merits ........... 27

      a. A.R.S. 12-3201 Violates The Overbreadth Doctrine ................. 27

         i. A.R.S. § 12-3201(E) Lacks A Plainly Legitimate Sweep;
         The Statute Violates The Petition Clause
         In Every Application ................................................................ 28

         ii. A.R.S. § 12-3201(E) Violates The Petition Clause
         At Least In A Substantial Number of Applications ................ 35

      b. A.R.S. §§ 12-3201(E)(1)(a), (c), and (f) Violate
      The Vagueness Doctrine ............................................................ 36

      c. A.R.S. § 12-3201(B) Is Not Narrowly Tailored ........................ 37

      d. A.R.S. § 12-3201 Violates Due Process .................................... 39

   2. Factor Two: Irreparable Injuries ..................................................... 39

   3. Factors Three and Four: The Balance of Equities Tip Sharply
   In Plaintiff's Favor, While An Injunction
   Is In The Public's Interest ................................................................ 40

   4. Summary ....................................................................................... 40

II. The District Court Erred When It Denied Injunctive Relief
Involving Presiding Judge Pamela Gates .............................................. 41

   A. The Arizona Supreme Court Has Spoken;
   Federal Courts Must Abide ............................................................... 41

1. There Is No Sovereign Immunity ..................................................... 44

2. There Is No Judicial Immunity ...................................................... 44

B. There Is A "Case or Controversy";
   Article III Jurisdiction Is Satisfied ...................................... 45

C. Injunctive Relief Is Warranted ........................................................ 47

CONCLUSION ............................................................................. 48

TABLE OF AUTHORITIES

PAGES

Cases

*360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC,*
 No. 19-CV-8760, 2020 WL 5259283 (S.D.N.Y. Sept. 3, 2020) ................ 34

*Am. Encore v. Fontes,*
 152 F.4th 1097 (9th Cir. 2025) ...................................... 17, 20, 21, 22, 23, 24, 37

*Antonyuk v. Chiumento,*
 89 F.4th 271 (2d Cir. 2023) .......................................................... 22

*Ariz. Attorneys for Crim. Just. v. Mayes,*
 127 F.4th 105 (9th Cir. 2025) ....................................................... 28

*Ariz. Dream Act Coal. v. Brewer,*
 757 F.3d 1053 (9th Cir. 2014) ................................................. 27, 40

*Ariz. Republican Party v. Richer,*
 257 Ariz., 210 (2024) ......................................................... 1, 6, 7

*B&G Foods N. Am., Inc. v. Embry,*
 29 F.4th 527 (9th Cir. 2022) ................................................... 34, 35

*BE & K Constr. Co. v. N.L.R.B.,*
 536 U.S. 516 (2002) ...................................................... 4, 12, 17, 18

*Bill Johnson's Rests., Inc. v. N.L.R.B.,*
 461 U.S. 731 (1983) ............................................................ 10, 11

*Bost, et al. v. Illinois State Board of Elections, et al.,*
 607 U.S. _____ (2026) ................................................................. 19

*Brush & Nib Studio, LLC v. City of Phoenix,*
 247 Ariz. 269 (2019) ................................................................. 43

*California Motor Transport Co. v. Trucking Unlimited,*
 404 U.S. 508 (1972) .................................................................... 2

iv

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ................................................................. 36

*Clark v. Campbell*,
   219 Ariz. 66 (App. 2008) ....................................................................... 42

*Crooks v. Maynard*,
   913 F.2d 699 (9th Cir. 1990) ................................................................. 14

*CrossFit Inc. v. Martin*,
   No. 2:14-CV-02277-PHX-JJT, WL 4236968 (D. Ariz. Sept. 22, 2017) .... 31

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ........................................................ 15, 44

*Evans v. Chater*,
   110 F.3d 1480 (9th Cir.1997) ................................................................. 27

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................... 25

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
   82 F.4th 664 (9th Cir. 2023) ........................................................... 27, 39

*Forrester v. White*,
   484 U.S. 219 (1988) .................................................................. 44, 45, 46

*Hudson v. Moore Business Forms, Inc.*,
   836 F.2d 1156 (9th Cir.1987) ................................................................. 30

*In re Kirkland*,
   915 F.2d 1236 (9th Cir. 1990) .......................................................... 1, 45

*In re Shannon*,
   179 Ariz. 52 (1994) ............................................................................... 42

*Isaacson v. Mayes*,
   84 F.4th 1089 (9th Cir. 2023) ............................................................... 22

*Johnson v. Couturier,*
    572 F.3d 1067 (9th Cir. 2009) ..................................................... 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir.2010) ...................................................... 14

*Looney v. Tierney*,
    776 F. Supp. 3d 868 (D. Mont. 2025) ......................................... 46

*Maldonado v. Harris,*
    370 F.3d 945 (9th Cir. 2004) ....................................................... 47

*Madison v. Groseth*,
    230 Ariz. 8 (App. 2012) .............................................................. 11

*Maricopa County v. Dann,*
    157 Ariz. 396 (1988) ......................................................... 16, 41, 42

*Maricopa County v. Tinney,*
    183 Ariz. 412 (1995) .............................................................. 16, 42

*Matsumoto v. Labrador,*
    122 F.4th 787 (9th Cir. 2024) ............................................ 23, 25, 44

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ....................................................... 40

*Mirabelli v. Olson*,
    761 F. Supp. 3d 1317 (S.D. Calif. 2025) ................................. 24, 26

*Mireles v. Waco,*
    502 U.S. 9 (1991) ............................................................. 16, 44, 45

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ......................................................... 27, 28, 33

*Moore v. Keegan Mgmt. Co.,*
    78 F.3d 431 (9th Cir. 1996) ........................................................... 7

*NAACP* v. *Button,*
   371 U.S. 415 (1963) .................................................................. 36

*Nat. Res. Def. Council, Inc. v. Winter*,
   508 F.3d 885 (9th Cir. 2003) ..................................................... 37

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003) ..................................................... 2

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
   810 F.3d 631 (9th Cir. 2015) ...................................................... 14

*Peace Ranch, LLC v. Bonta,*
   93 F.4th 482 (9th Cir. 2024) ................................................. 19, 22

*Planned Parenthood Great Nw. v. Labrador*,
   122 F.4th 825 (9th Cir. 2024) ..................................................... 19

*Prof. Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc.,*
   508 U.S. 49 (1993) ...................................................................... 7

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .................................................................... 2

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ................................................... 40

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020) .................................................................... 39

*Sable Commc'ns of Cal., Inc. v. FCC*,
   827 F.2d 640 (9th Cir.1987) ...................................................... 14

*Saenz v. Roe*,
   526 U.S. 489 (1999) .................................................................. 35

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...................................... 1, 18, 28, 33, 34

*Spokeo, Inc.* v. *Robins*,
578 U. S. 330 (2016) ................................................................. 19

*State ex rel. Andrews v. Superior Court*,
39 Ariz. 242 (1931) .................................................................. 42

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................ 20, 22

*Thole* v. *U. S. Bank N. A.*,
590 U. S. 538 (2020) ................................................................ 25

*Tucson v. City of Seattle*,
91 F.4th 1318 (9th Cir. 2024) ..................................................... 2

*U.S. v. Adkinson*,
247 F.3d 1289 (11th Cir.2001) ..................................................... 6

*U.S. v. Cabaccang*,
332 F.3d 622 (9th Cir.2003) ...................................................... 30

*U.S. v. Emmett*,
749 F.3d 817 (9th Cir. 2014) ..................................................... 15

*U.S. v. Hansen*,
599 U.S. 762 (2023) ......................................................... 1, 27, 28

*U.S. v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) ............................................... 14, 15

*U.S. v. Koziol*,
993 F.3d 1160 (9th Cir. 2021) .................................................... 18

*U.S. v. O'Brien*,
391 U.S. 367 (1968) ................................................................. 38

*U.S. v. Sineneng-Smith*,
590 U.S. 371 (2020) ......................................................... 2, 36, 43

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. &*
*Const. Trades Council, AFL-CIO,*
  31 F.3d 800 (9th Cir. 1994) ............................................................... 2, 6, 29

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) .............................................................................. 38

*Where Do We Go Berkeley v. California Dep't. of Transportation,*
  32 F.4th 852 (9th Cir. 2022) .................................................................. 26

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000) ............................................................... 31

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) ........................................................................... 41, 46

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ............................................................................ 26, 40

*Wolfe v. George,*
  486 F.3d 1120 (9th Cir. 2007) ................................................................. 6

*Wolfe v. Strankman,*
  392 F.3d 358 (9th Cir. 2004) ............................................................ 44, 47

Statutes

A.R.S. § 12-349 ..................................................................................... 5, 6

A.R.S. § 12-3201 ................................................................................ passim

Calif. Code Civ. P. §§ 391-391.8 ............................................................... 5

Constitution

U.S. Const., Amend. I ........................................................................ passim

Ariz. Const. art. 2, § 5 ............................................................................ 43

Ariz. Const. art. 6, § 3 ............................................................................ 41

INTRODUCTION

Arizona Revised Statutes ("A.R.S.") § 12-3201 authorizes state judges to permanently enjoin Arizonans from exercising their First Amendment right to petition courts based on "vexatious conduct" as that term is defined in §§ 12-3201(E)(1)(a)-(f). "[A]ny" instance of "vexatious conduct" results in a "vexatious" label which, in turn, statutorily mandates an untailored, blanket injunction forever burdening their right to petition: "A pro se litigant who is designated a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court." A.R.S. § 12-3201(B). The law's core substantive defect is that every activity which § 12-3201(E)(1)(a)-(f) regulates also classifies as constitutionally protected core court "petitioning activity" or protected "conduct incidental to a petition". *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932-38 (9th Cir. 2006). Per *Ariz. Republican Party v. Richer*, 257 Ariz., 210 (2024), the Arizona Supreme Court interprets § 12-3201 language the same way Plaintiff does, and "decisions of the highest state court" are binding on federal district and circuit courts. *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990) ("When interpreting state law, a federal court is bound by the decision of the highest state court."). Because "no set of circumstances exists under which the [statute] would be valid.'" *U.S. v. Hansen*, 599 U.S. 762, 769 (2023), the statute is overbroad. It is also impermissibly vague in several provisions and not narrowly tailored to meet any

1

legitimate government interest. When First Amendment rights are implicated, federal courts void state laws (1) which are overbroad "because of a judicial prediction or assumption that the statute's very existence may cause [some citizens] to refrain from constitutionally protected [activity]", *U.S. v. Sineneng-Smith,* 590 U.S. 371, 380 (2020) (Thomas, J., concurring); (2) "for vagueness if [the laws] 'lack[] any ascertainable standard for inclusion and exclusion,' thereby authorizing or encouraging 'the authorities [to] arbitrarily prosecute" for ambiguously proscribed conduct", *Tucson v. City of Seattle,* 91 F.4th 1318, 1323 (9th Cir. 2024); and (3) that are not "narrowly tailored" to achieve a legitimate government interest, *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Each conditions exists here, meaning the district court should have enjoined enforcement of § 12-320 to protect the "right of access to the courts [which] is an aspect of the First Amendment right to petition the Government." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Legislators and a public figure weaponized the defective statute in a single public records case involving Plaintiff to avoid scrutiny. (2-ER-024-054). But Plaintiff does not challenge that state court judgment. He instead mounts a "general" First Amendment facial challenge to the statute as the Ninth Circuit allows. *See Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003). Despite Plaintiff being threatened by state officials and private parties with administrative, civil, and criminal enforcement of A.R.S. §

12-3201(B) for filing court papers absent prior approval in well-founded cases, the district court erroneously found he lacked pre-enforcement standing to sue Arizona Attorney General Mayes in her official capacity. The district court also erroneously found Presiding Judge of the Maricopa County Superior Court Pamela Gates enjoyed judicial immunity for performing administrative acts, and that no Article III "case or controversy" existed between Plaintiff and the Presiding Judge in her official administrative capacity. Finally, the district court applied the wrong legal standard defining the Petition Clause's scope to find Plaintiff unlikely to succeed on the merits. This Court should overturn these errors of law.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction per 28 U.S.C. § 1331 and 28 U.S.C. § 2201. That court definitively denied a temporary restraining order and preliminary injunction on December 16th (1-ER-004), and Plaintiff filed a timely notice of appeal on December 19th. (1-ER-001). This Court has jurisdiction per 28 U.S.C. § 1292(a)(1).

## ISSUES PRESENTED

1. Whether Plaintiff has standing to sue Attorney General Mayes?

2. Whether there is an Article III "case or controversy" between Plaintiff and

Presiding Judge Gates.

3. Whether the district court erred in denying injunctive relief in a First Amendment facial challenge to A.R.S. § 12-3201?

4. Whether Presiding Judge Gates has judicial immunity?


## STATEMENT OF THE CASE

To guarantee "breathing space essential to [the Petition Clause's] fruitful exercise", the Supreme Court "limited [statutory] regulation to suits that were _both_ objectively baseless _and_ subjectively motivated by an unlawful purpose." *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31 (2002) (Italics with underline emphasis added). This "both ... and" conjunctive[1] legal standard defines the scope of the Petition Clause's protection for court petitioning and incidental conduct.

### I. Statutory Background

Appellant facially challenges A.R.S. § 12-3201 (2-ER-063-081) which reads in full:

> A. In a noncriminal case, at the request of a party or on the court's own motion, the presiding judge of the superior court or a judge designated by the presiding judge of the superior court may designate a pro se litigant a vexatious litigant.

---

[1] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.").

B. A pro se litigant who is designated a vexatious litigant
may not file a new pleading, motion or other document
without prior leave of the court.
C. A pro se litigant is a vexatious litigant if the court
finds the pro se litigant engaged in vexatious conduct.
D. The requesting party may make an amended request at
any time if the court either:
1. Determined that the party is not a vexatious litigant
and the requesting party has new information or evidence
that is relevant to the determination, even if there is not a
pending case in the court.
2. Did not rule on the original request during the
pendency of the action, even if there is not a pending
case in the court.
E. For the purposes of this section:
1. "Vexatious conduct" includes any of the following:
(a) Repeated filing of court actions solely or primarily for
the purpose of harassment.
(b) Unreasonably expanding or delaying court
proceedings.
(c) Court actions brought or defended without substantial
justification.
(d) Engaging in abuse of discovery or conduct in
discovery that has resulted in the imposition of sanctions
against the pro se litigant.
(e) A pattern of making unreasonable, repetitive and
excessive requests for information.
(f) Repeated filing of documents or requests for relief
that have been the subject of previous rulings by the
court in the same litigation.
2. "Without substantial justification" has the same
meaning prescribed in section 12-349.

(2-ER-065).

The Arizona Legislature considered and rejected a version of California's

vexatious litigant statute (*see* Calif. Code Civ. P. §§ 391-391.8) which the Ninth

Circuit accepts as constitutional based on California appellate court decisions. *See*

5

*Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007). Arizona legislators instead

modified language from fee-shifting statute A.R.S. § 12-349[2] and adopted that as

the Arizona vexatious litigant statute in 2015. (2-ER-066). As the state supreme

court explained, "§ 12-349's prior version defined 'without substantial

justification' – the basis for fees in § 12-349(A)(1)—to mean 'the claim or defense

constitutes harassment, is groundless[3] and is not made in good faith.' § 12-349(F)

(2011). In other words, by including 'harassment' as a definitional component of

'without substantial justification,' the statute moored its meaning, in part, to the

presence of bad faith[4] in the form of harassment. However, in 2012, the legislature

excised 'harassment' from § 12-349(F)." *Richer*, 257 Ariz. at 367. Rather than

---

[2] A.R.S. § 12-349 reads in pertinent part:

> A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> 4. Engages in abuse of discovery. ...
> F. For the purposes of this section, "without substantial justification" means that the claim or defense is groundless and is not made in good faith.

[3] "Groundless" and "baseless" are synonymous terms. *See* Black's Law Dictionary (7th Ed., 1999) ("Baseless" means "without legal or factual basis; groundless".).

[4] "[B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *U.S. v. Adkinson,* 247 F.3d 1289, 1291 (11th Cir.2001).

including "the presence of bad faith", the term "without substantial justification",

defined now only as "groundless and is not made in good faith", refers to the

case's underlying lack of factual or legal merit "judged on an objective standard of

what a professional, competent attorney would [file] in similar circumstances."[5] *Id*

at 368. With no "bad faith" provision consideration "moored" to consideration for

the objective merits because that would render the merits provision "superfluous",

*Id* at 367, A.R.S. § 12-3201 went into effect January 1, 2015. (2-ER-068-070).

## II. Factual Background

In November 2021, investigative journalists published an article in *The

Arizona Republic* confirming former Arizona State Representative / Senator Robert

Meza systematically traded his public office for private gain beginning no later

than 2014 and ending 2021. (2-ER-026-039). Meza used his public office to

secure state-administered Medicaid funds and other public funds for nonprofit

behavioral health organizations under the artifice of a benevolent legislator

supporting his "constituents", as he put it. (2-ER-048). What Meza materially

omitted from state and federal officials during those solicitations is that those

---

[5] "[W]ithout substantial justification", "objectively baseless", and "frivolous"[5] are synonymous terms. *See Moore v. Keegan Mgmt. Co.,* 78 F.3d 431, 434 (9th Cir. 1996) (A complaint is "frivolous" if it "is both baseless and made without a reasonable and competent inquiry."); *Prof. Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc.,* 508 U.S. 49, 61 (1993) (A "lawsuit" is considered "objectively baseless" if "no reasonable litigant could realistically expect success on the merits.").

nonprofits' executives were covertly paying him for his "services as a fundraiser", as one complicit executive later admitted. (2-ERE-052). Plaintiff's former spouse was one of those complicit executives. When Plaintiff tried to amicably end the marriage, the ex-spouse, upon Meza's instruction and assistance, "helped" her lodge false domestic violence allegations as means to conceal the fraud scheme since the ex-spouse had revealed much of the scheme during the relationship. (2-ER-036-039). A state court judge ultimately vacated the fraudulently secured *ex parte* domestic violence restraining order and awarded Plaintiff fees and costs for the obviously fabricated allegations. (2-ER-039-044).

Upon learning of coordinated attacks on his personal reputation, financial resources, and business asserts, Plaintiff brought Meza's scheme to light through litigation in August 2021, at which point each nonprofit abruptly ceased their paying Meza. (2-ER-029-045). Six months later, the Chair of the Arizona State Senate Ethics Committee declared there was good cause to believe Meza's conduct in office was criminal. (2-ER-035). Around that same time, Plaintiff invoked Arizona public records law to inspect records documenting Meza's "constituent" support of the nonprofits paying him (2-ER-048-052). He secured records confirming the scheme but Meza, operating in his official capacity as a state legislator, and one of the scheme's facilitators, Karrin Taylor Robson, jointly made false factual statements and omitted material facts in litigation to shut down

additional public records production.  They then jointly moved for Plaintiff to be found vexatious in active litigation. (2-ER-052-056).  That parallel litigation has since been proven to be meritorious, including where Plaintiff has secured non-nuisance financial settlements.  At Meza's continued behest, and despite a judgment to the contrary, Plaintiff's ex-spouse declared that she was the victim of criminal domestic, supported by the vexatious litigant order, and has since sought Plaintiff to be criminally indicted and found in contempt for filing court papers in well-founded lawsuits. (2-ER-054-058).  The Arizona Secretary of State declared the ex-spouse a domestic violence victim (2-ER-057).  The Arizona Attorney General refuses to disavow enforcement of § 12-3201(B) against Plaintiff, instead threatening civil and criminal prosecution should Plaintiff file court papers in well-founded lawsuits absent prior court approval. (2-ER-298-324).  Fully aware of these facts, the Presiding Judge disclosed Administrative Order 2023-159 during this litigation, refuses to rescind it despite plenary authority to rescind it, and publicly maintains Plaintiff on the state's online vexatious litigant list. (2-ER-298-324).

### III. Procedural Background

Plaintiff filed suit on February 5, 2025 naming Arizona Attorney General Kris Mayes, in her official capacity, and Presiding Judge Joseph Welty, in his official administrative capacity, as *Ex Parte Young* "proper defendants" to mount a

First Amendment facial challenge against A.R.S. § 12-3201 under Count One (2-ER-063-081). He filed a combined motion for a temporary restraining order and preliminary injunction seeking preliminary prospective relief on May 14th. (2-ER-150). Seeking to meet its "independent obligation to determine whether it has subject-matter jurisdiction", the district court issued an Order to Show Cause instructing Plaintiff to explain why the case should not be dismissed as a "de facto appeal" and not be subject to the *Rooker-Feldman* or *Younger* abstention doctrines. Plaintiff responded and the case went forward.

Attorney General Mayes then responded to the motion for preliminary relief on June 2nd. She argued (1) the district court lacks subject-matter jurisdiction in this case as against AG Mayes because Plaintiff lacked pre-enforcement standing because he had no credible fear or her prosecution and lack of causation (traceability and redressability); and (2) her office had sovereign immunity for lack of connection to the statute's enforcement. On the merits, she contended Plaintiff was "unlikely to succeed on the merits", arguing (1) the statute is not overbroad because § 12-3201(E) did not reach constitutionally protected activities based on the legal standard that "baseless litigation is not immunized by the First Amendment right to petition" per "*Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983)"; (2) the statute is not void for vagueness because "we can never expect mathematical certainty from our language"; (3) the state had a government

interest that did not require narrow tailoring; and (4) the challenged statute guaranteed Arizonans' procedural rights because, despite containing no language referencing a hearing, courts could construe the statute to require a hearing per "*Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 18 (App. 2012)". (2-ER-169-187).

On June 3rd, Attorney General Mayes filed a combined Fed. R. 12(b)(1) and (6) dismissal motion repeating the same jurisdictional and merits defenses in her Response to the motion for preliminary injunctive relief. (2-ER-202). Plaintiff refuted each of the Attorney General's jurisdictional and merits arguments in his June 6th Reply to his motion for injunctive relief (2-ER-188) and in his July 3rd Response to Attorney General's dismissal motion (2-ER-222). He emphasized that, in reference to the Attorney General's reading of *Bill Johnson's*, "what the Supreme Court actually "said in *Bill Johnson's* [is] that [an adjudicative body] could enjoin baseless retaliatory [i.e., 'baseless' and 'retaliatory'] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.' We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.' While this analogy is helpful, it does not suggest that the class of baseless litigation is completely unprotected: At most, it indicates such litigation should be unprotected 'just as' false statements are. And while false statements may be unprotected for their own sake, '[t]he First

Amendment requires that we protect some falsehood in order to protect speech that matters.' ([N]oting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise'). ... It is at least consistent with these 'breathing space' principles that we have never held that the entire class of objectively baseless litigation may be enjoined or declared unlawful even though such suits may advance no First Amendment interests of their own. Instead, in cases like *Bill Johnson's* and *Professional Real Estate Investors*, our holdings limited regulation to suits that were <u>*both*</u> objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K*, 536 U.S. at 530-31. (Italics with underlined emphasis added). (2-ER-190).

On June 20th, the district court tentatively denied Plaintiff's request for a temporary order and preliminary injunction without conducting a requested hearing while expressing ongoing questions regarding jurisdictional facts and facts going to the merits of overbreadth. (1-ER-007).

Meanwhile, Plaintiff repeatedly attempted to serve Presiding Judge Joseph Welty as early as March 2025, including asking attorneys from the Attorney General's Office to accept service on the Presiding Judge's behalf. Presiding Judge Gates assumed the position of Presiding Judge in July 2025, authorized an attorney from the Attorney General's office to enter an appearance, and was

substituted as the state officer defendant. To be clear, due to the timing of service acceptance the Presiding Judge(s) never responded to, and the district court never instructed the Presiding Judge(s) to respond to, the motion for preliminary relief. Instead, Presiding Judge Gates filed a Fed. R. Civ. P. 12(b)(1) and (6) dismissal motion relying on the question of whether a Presiding Judge's administrative acts qualify as judicial acts. She did not challenge the actual merits but produced Administrative Order 2023-159 (2-ER-254-264), a document which neither Plaintiff nor the Attorney General knew existed prior to July 2025.

Plaintiff proceeded to file several motions to judicially notice facts going to jurisdiction for both state officer defendants and to refute their sovereign immunity and judicial immunity defenses. Upon securing and noticing additional facts, Plaintiff submitted a second motion for a temporary restraining order and a preliminary injunction on December 12t. (2-ER-298). The district court emphatically denied that motion on December 16th. (1-ER-004).

As the Appellant, Plaintiff quickly moved for a preliminary injunction pending appeal in the Court of Appeals. That appellate motion is now fully briefed. In her appellate Response, the Attorney General maintained each jurisdictional and merit presented in the district court. In her one-page appellate "joinder" Response, the Presiding Judge maintained her jurisdictional immunity and Article III "case or controversy" defenses, but expressly did *not* join in the

Attorney General's merits defense. *See* Circuit Dkt. 8.1 ("The Attorney General responded to the motion on January 5, 2026, and the Presiding Judge joined this response *in part*"). Accordingly, the two state officers have taken opposing positions as to the merits of Appellant's First Amendment claim.

## STANDARD OF REVIEW

"The question of whether a particular case presents an Article III case or controversy is ... reviewed de novo." *Sable Commc'ns of Cal., Inc. v. FCC,* 827 F.2d 640, 642 (9th Cir.1987). "A district court's decision regarding standing is reviewed de novo." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1087 (9th Cir.2010). "[W]hether a judge is protected by judicial immunity is a question of law reviewable de novo.". *Crooks v. Maynard,* 913 F.2d 699, 700 (9th Cir. 1990). When asked "to consider legal concepts [such as judicial immunity] in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo." *U.S. v. Hinkson,* 585 F.3d 1247, 1260 (9th Cir. 2009).

The Ninth Circuit reviews "a district court's grant or denial of a preliminary injunction for an abuse of discretion." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,* 810 F.3d 631, 635 (9th Cir. 2015). "A district court necessarily abuses

its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Johnson v. Couturier,* 572 F.3d 1067, 1078 (9th Cir. 2009). "Thus, the first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested. If the trial court failed to do so, we must conclude it abused its discretion." *Hinkson,* 585 F.3d at 1261-62; *U.S. v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("It is an abuse of discretion to apply the wrong legal standard"). As to the second step, "[w]hen reviewing factual findings, the Supreme Court has held that 'a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hinkson*, 585 F.3d at 1260.

## SUMMARY OF ARGUMENT

Presiding Judge Gates' defense hinges on absolute judicial immunity for administratively enforcing the statute in her official administrative capacity. "[A]bsolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, ... functions that judges may on occasion be assigned to perform." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001). Regardless, after revealing Administrative Order 2023-159, she asked the district court to review that administrative order on its face, and find that she performed a judicial act. The

15

district court did just that.   This was another legal error.  As a matter of state law,

Arizona judges with state constitutional authority to issue an administrative order

only can perform an administrative act when doing so, not a judicial act, per the

Arizona Constitution and Arizona Supreme Court precedent.  *See Maricopa*

*County v. Dann,* 157 Ariz. 396 (1988); *Maricopa County v. Tinney,* 183 Ariz. 412

(1995).  In other words, no set of facts can convert those administrative acts into

judicial acts.  Per state constitutional, statutory, and procedural law, judges also

have no subject matter jurisdiction over any dispute between private parties and no

personal jurisdiction over private parties.  *Id*.  And "a judge is not immune for

actions, though judicial in nature, taken in the complete absence of all

jurisdiction."  *Mireles v. Waco,* 502 U.S. 9, 12 (1991).  In sum, the district court

erred when finding Presiding Judges can perform judicial acts in the exercise of

their office's administrative authority, when finding Presiding Judge Gates enjoyed

absolute judicial immunity, and when finding there is no Article III "case or

controversy" between the Presiding Judge and Appellant to challenge § 12-3201.

Attorney General Mayes obfuscated her office's connection to the statute's

enforcement for months while acknowledging other state officers' connection to

the statute's enforcement.  She ultimately refused to disavow her own enforcement

of the statute but still claimed sovereign immunity because § 12-3201 is not a

criminal statute.  *Am. Encore v. Fontes,* 152 F.4th 1097 (9th Cir. 2025) forecloses

the entirety of her standing and sovereign immunity defenses. The Attorney General is an *Ex Parte Young* proper defendant as part of a combination of state officers and private parties who "collectively" maintain a sufficient connection to the statute's enforcement and who threaten Appellant with criminal investigation and prosecution for conduct proscribed by that statute. *Am. Encore,* 152 F.4th at 1118. And it is immaterial whether the challenged piece of legislation is a criminal statute. *Id* at 1115. The district court erred when it found Appellant lacked standing and that the Attorney General enjoyed sovereign immunity.

As to the merits, Attorney General Mayes and Presiding Judge Gates disagree. The state officers' contrasting positions provide sufficient evidence to raise "serious questions" going to the merits of a First Amendment claim, and grant injunctive relief. That said, the U.S. Supreme Court has "limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose" in conjunctive fashion. *BE & K Constr. Co.*, 536 U.S. at 531 (emphasis original). The Ninth Circuit found "*BE & K* made this [conjunctive standard] explicit" such that the Petition Clause's scope protects and "immunizes" core court "petitioning activities" (i.e., filing Ariz. R. Civ. P. 7 "pleadings allowed" such as a "complaint", "answer", etc.) and all "conduct incidental to a petition" (i.e., motion practice, settlement communications, etc.) from statutory regulation "unless the underlying petition itself fell outside" the *BE & K* "both ... and"

conjunctive parameters. *Sosa*, 437 F.3d at 932-938. Only when the "underlying petition f[alls] outside" those parameters can a suit be treated as an actionable, non-immunized "sham". *Id*; *U.S. v. Koziol,* 993 F.3d 1160, 1171 (9th Cir. 2021) ("requiring both objective baselessness and an improper motive ... ensure[s] citizens may enjoy the right of access to the courts"). Simply put, every instance of A.R.S. §§ 12-3201(E)(1)(a)-(f) "vexatious conduct" falls within the Petition Clause's conjunctive protections. Even if any statutorily defined instance of "vexatious conduct" is somehow unprotected, the statute still fails as the statute is overly vague and A.R.S. § 12-3201(B) is not a "narrowly tailored" burden on First Amendment rights. Procedurally, § 12-3201 also lacks due process. Regardless, the district court erroneously denied injunctive relief based on a series of legal errors from jurisdiction to the merits. The Court should reverse the district court.

ARGUMENT

I. The District Court Erred When It Denied Injunctive Relief Involving Arizona Attorney General Kris Mayes

Plaintiff sued in federal court to enjoin administrative, civil, and criminal enforcement of A.R.S. § 12-3201, and obtain prospective relief per *Ex Parte Young*. He quickly sought preliminary injunctive relief regarding the Attorney General's enforcement of conduct proscribed by the statute.

A. Plaintiff Has Standing To Sue Attorney General Mayes

"Under Article III of the Constitution, plaintiffs must have a 'personal stake' in a case to have standing to sue. They must, in other words, be able to answer a basic question: 'What's it to you?'" *Bost, et al. v. Illinois State Board of Elections, et al.*, 607 U.S. ____ (2026) (citations omitted). That "personal stake" includes a stake in any substantive right and in "a fair process". *Id*. Here, several alleged harms to substantive and/or procedural rights affect Plaintiff in a "personal and individual way,". *Spokeo, Inc.* v. *Robins*, 578 U. S. 330, 339 (2016).

1. Legal Standard

"Article III standing ... 'requires a plaintiff to have [1] suffered an injury-in-fact, [2] caused by the defendant's conduct, that [3] can be redressed by a favorable result.'" *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 835 (9th Cir. 2024). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 486-87 (9th Cir. 2024).

2. Plaintiff Suffers Pre-Enforcement Injuries In a First Amendment Case

The Ninth Circuit has "long recognized that 'First Amendment cases raise unique standing considerations,' ... that 'tilt[] dramatically toward a finding of standing. This is because 'a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.' 'Because of the sensitive nature of

constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights.'" *Am. Encore,* 152 F.4th at 1113-18 (citations omitted). Pre-enforcement injuries exist "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

### a. Plaintiff Meets *Driehaus* Factor One

The *Driehaus* Factor One "concept of 'intention' [to engage in a course of conduct arguably affected with a constitutional interest] is more counterfactual than practical. That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed.'" *Am. Encore,* 152 F.4th at 1115. Here, Plaintiff alleged his intent to file court pleadings and motion papers absent leave of the court in ongoing court cases, including in those deemed well-founded in state trial and appellate courts. (2-ER-057-058). His expressed intent to "engage in First Amendment [petitioning] is sufficient [to meet *Driehaus* Factor One] given the vagueness and overbreadth of the [challenged statute] itself". *Id*.

### b. Plaintiff Meets *Driehaus* Factor Two

Regarding *Driehaus* Factor Two, a "plaintiff must only show that their

'future conduct ... [is] 'arguably ... proscribed by [the] statute' it wishes to challenge.' And for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Id* at 1116. Plaintiff facially challenges § 12-3201. There can be no dispute that his intention to file court papers in ongoing litigation absent prior court approval is "arguably proscribed" by § 12-3201(B) ("A pro se litigant who is designated a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court."). He meets *Driehaus* Factor Two.

<u>c. Plaintiff Meets *Driehaus* Factor Three</u>

As to *Driehaus* Factor Three, "[i]n determining whether a plaintiff has shown a credible or substantial threat of enforcement, we have identified a number of factors that may support the reasonableness of a plaintiff's fear of prosecution. These include: (1) 'whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' (2) whether the enforcing authority has disavowed enforcement, and (3) 'whether there is a history of past prosecution or enforcement'. Ultimately, the touchstone of our inquiry is whether Plaintiffs have adduced enough evidence to show that there is a realistic threat that the law in question may be enforced against them. ... In evaluating the threat of enforcement, we look to 'the threat posed *collectively* by the entire 'universe of potential complainants.'" *Am. Encore,* 152 F.4th Id at 1118-19 (emphasis

original).  The third *Driehaus* factor is considered an "attitudinal factor" of government enforcer(s), *Peace Ranch,* 93 F.4th at 490, where "[c]ourts have not placed the burden on the plaintiff to show an intent by the government to enforce the law against it but rather presumed such intent in the absence of a disavowal by the government."  *Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2d Cir. 2023). Consistent with the Second Circuit's holding that *Driehaus* Factor Three "is a 'quite forgiving' requirement that sets up only a 'low threshold'", *Id*, the Ninth Circuit has "taken a broad view of this factor".  *Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023).  A plaintiff need only demonstrate that the alleged threat is not "imaginary or wholly speculative".  *Driehaus,* 573 U.S. at 160.

It is said that the credible threat element "often rises or falls with the enforcing authority's willingness to disavow enforcement".  *Peace Ranch,* 93 F.4th at 490.  Despite months of obfuscation where Attorney General Mayes contended "county attorneys were more likely to prosecute" (2-ER-178) which should be considered a tacit admission that she might prosecute and is connected to the statute's enforcement, the Attorney General finally expressly admitted she does not disavow enforcement of § 12-3201(B) against Appellant. (2-ER-298-324).  This refusal to disavow enforcement meets *Driehaus* Factor Three where when challenging a "law whose history of enforcement is negligible or nonexistent, either a 'general warning of enforcement' or a 'failure to disavow enforcement' is

sufficient to establish a credible threat of prosecution in pre-enforcement challenges on First Amendment grounds." *Matsumoto v. Labrador,* 122 F.4th 787, 797 (9th Cir. 2024). Indeed, any lack of past prosecution could easily indicate that the statute has had the chilling effect that Plaintiff alleges and that the First Amendment does not tolerate.

Furthermore, "[i]n evaluating the threat of enforcement, we look to 'the threat posed *collectively* by the entire 'universe of potential complainants.'" *Am. Encore,* 152 F.4th at 1118 (emphasis original). And neither the challenged statute nor the proscribed conduct need be listed under criminal statutes to credibly fear criminal prosecution. *Id*. The recent *Am. Encore* case – where Attorney General Mayes was a defendant – saw a portion of Arizona's Election Procedural Manual struck down for violating the First Amendment because conduct proscribed in that non-criminal manual made a person "subject to criminal liability" based on a separate criminal statute where private persons and/or other state officers "may nonetheless report [litigants] to police" for criminal "harassment" due to engaging in conduct proscribed under the challenged statute. *Id* at 1115. As sufficiently alleged, Plaintiff credibly fears private persons and/or state officers will investigate, indicate and prosecute him for violations of A.R.S. §§ 13-2921 and/or 13-2810(A)(2) for filing court papers in violation of § 12-3201(B) but consistent with his fundamental rights under the Petition Clause. (2-ERE-057-058). Plaintiff

has faced continuous threats of administrative, civil, and criminal enforcement for years.  He meets all *Driehaus* factors for pre-enforcement injuries caused by the "universe of potential complainants", including the Attorney General.

### 3. Traceability and Redressability Are Met

"Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation [traceability and redressability] requirements."  *Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1324 (S.D. Calif. 2025).  Again, Attorney General Mayes belongs to a "universe of potential complainants" who "collectively" threaten administrative, civil, and/or criminal enforcement of § 12-3201(B), thus giving Appellant standing to sue her as an *Ex Parte Young* proper defendant.  *Am. Encore,* 152 F.4th at 1118.  As a test of traceability, Plaintiff would suffer considerable injuries if criminally investigated, prosecuted, and/or incarcerated for exercising his First Amendment rights.  To test redressability, enjoining the Attorney General would foreclose involvement with the criminal justice system and send a strong signal to all other private persons or state officers statutorily authorized to civilly or criminally prosecute Plaintiff for constitutionally protected activity that they will not succeed.

### 4. Attorney General Mayes Has No Sovereign Immunity

Plaintiff sufficiently alleges that, by operation of A.R.S. § 12-3201(B), the Attorney General threatens him with enforcement of an "unconstitutional act of the

state legislature [and has] go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908). This scenario operates as an "exception" to sovereign immunity and merely requires the state officer in question maintains "some connection" to the challenged law's enforcement. *Id.* "All that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." *Matsumoto,* 122 F.4th at 803. This requirement poses a "low bar", *Id*, that Appellant easily clears.

## 5. Conclusion

"Courts sometimes make standing law more complicated than it needs to be." *Thole* v. *U. S. Bank N. A.*, 590 U. S. 538, 547 (2020). Such is the case here. "At the pleading stage, a plaintiff must allege facts demonstrating each element of Article III standing. But a plaintiff need not satisfy the *Iqbal/Twombly* plausibility standard. An Article III standing inquiry does not touch directly on the merits of the case. ... Rather, 'the jurisdictional question of standing precedes, and does not require, analysis of the merits.' 'Standing is emphatically not a doctrine for shutting the courthouse door to those whose causes we do not like. Nor can

standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.'" *Mirabelli*, 761 F. Supp. 3d at 1324 (citations omitted). Plaintiff sufficiently alleges standing at the pleading stage to sue Attorney General Mayes. The district court erred as matters of law to find otherwise.

B. The District Court Erred To Deny Injunctive Relief On The Merits

"The Supreme Court has explained that plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest." *Where Do We Go Berkeley v. California Dep't. of Transportation,* 32 F.4th 852, 859 (9th Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Courts *"*evaluate 'these factors on a sliding scale, such 'that a stronger showing of one element may offset a weaker showing of another.' When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits – a lesser showing than likelihood of success." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,* 82 F.4th 664, 684-95 (9th Cir. 2023).

### 1. Factor One: Plaintiff Is Likely To Succeed On The Merits

Should Appellant present a "colorable First Amendment claim" all other injunctive factors resolve in his favor.[6] *See Id* at 694-95 ("'Irreparable harm is relatively easy to establish in a First Amendment case' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'"); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[B]y establishing a likelihood that [the challenged statute] violates the U.S. Constitution, Plaintiff[] ha[s] also established that both the public interest and the balance of the equities favor [injunctive relief].").  He sufficiently alleges a colorable First Amendment claim. (2-ER-150; 2-ER-298).

### a. A.R.S. 12-3201 Violates The Overbreadth Doctrine

Any state law which "lacks a plainly legitimate sweep" is void.  *Moody v. NetChoice, LLC*, 603 U.S. 707, 721 (2024).  "[L]itigants mounting a facial challenge to a statute normally 'must establish that *no set of circumstances* exists under which the [statute] would be valid.'"  *Hansen*, 599 U.S. at 769. (emphasis original).  Alternatively, First Amendment facial challenges also may be successful if a plaintiff can show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*.

---

[6] "A claim is colorable if it is not 'wholly insubstantial, immaterial, or frivolous.'" *Evans v. Chater,* 110 F.3d 1480, 1483 (9th Cir.1997).

"[I]n facial challenges under ... the First Amendment, like this one, courts set the bar lower out of respect for the value of free expression." *Ariz. Attorneys for Crim. Just. v. Mayes,* 127 F.4th 105, 107 (9th Cir. 2025).

### i. A.R.S. § 12-3201(E) Lacks A Plainly Legitimate Sweep; The Statute Violates The Petition Clause In Every Application

The "first step in the proper facial analysis is to assess the state law's scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody*, 603 U.S. at 724. A.R.S. § 12-3201 "actors" are "pro se litigant[s]" involved in any "noncriminal case". "[A]ctivities" that the challenged provisions "prohibit or otherwise regulate" are "any" activities defined as "vexatious conduct" per §§ 12-3201(E)(1)(a)-(f).

Every activity which § 12-3201(E)(1)(a)-(f) defines as "vexatious conduct" also classifies as protected core court "petitioning activity" or "conduct incidental to a petition" which falling squarely under the Petition Clause's "breathing space" principles outlined in *BE & K. Sosa,* 437 F.3d at 932-38. Again, the state's highest court held that considerations for "subjective" bad faith motives or purposes behind bringing an action are not "moored" to any consideration for the "objective" merits since to conclude otherwise renders § 12-3201(E)(1)(c) "superfluous". With these *Richer*, *BE & K*, and *Sosa* parameters in mind, each § 12-3201(E)(1)(a)-(f) provision can be properly analyzed for overbreadth.

A.R.S. § 12-3201(E)(1)(c) ("Court actions brought or defended without substantial justification) only considers whether an action is objectively baseless. Critically, this provision – the only provision which speaks to the action's objective merits – considers no subjective motive or purpose. But once again, "[t]he two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO*, 31 F.3d at 810-11. A "court action" would need to meet <u>*both*</u> parts of this conjunctive test to fall outside the Petition Clause's protections and nothing in this provision reaches any form of subjectively motivated "intent" to accomplish an improper purpose per *Richer*. This provision simply describes negligently filed "court actions" lacking factual or legal merit. In sum, the core court petitioning activity described in 12-3201(E)(1)(a) falls squarely under the Petition Clause's conjunctive safeguards in every instance.

A.R.S. § 12-3201(E)(1)(a) ("Repeated filing of court actions solely or primarily for the purpose of harassment") refers to subjective bad faith "harassment" demonstrated in the specific course of "filing of court actions" which are acts that represent quintessential, literal court petitioning. *See* Ariz. R. Civ. P. 7. This provision does not define "harassment". When interpreting statutes, undefined terms take on their "ordinary, contemporary, common meaning" rather than their legal meaning. *U.S. v. Cabaccang,* 332 F.3d 622, 626 (9th Cir.2003).

29

Thus, "harassment" here means general annoyance regardless of whether that emotional response results from an opponent's legitimate purpose of vindicating personal rights through litigation. In stark contrast to the word's ordinary meaning, the legal meaning of "harassment" subsumes the lack of a "legitimate purpose". *See* Black's Law Dictionary (12th ed. 2024) ("Harassment" means "[w]ords, conduct, or action . . . that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves *no legitimate purpose*."). Once more, *Richer* makes clear that subjective bad faith considerations are not "moored" to considerations for the objective merits of a meritorious (i.e. "legitimate") suit, meaning §§ 12-3201(E)(1)(a) and (c) operate separately. Hence, A.R.S. § 12-3201(E)(1)(a) merely captures whether a litigant experiences annoyance for being sued. If the suits possess arguable merit, the First Amendment does not concern itself with whether the defendant is upset when being held liable. *See Hudson v. Moore Business Forms, Inc*., 836 F.2d 1156, 1159 (9th Cir.1987) ("[A] complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent".). In the context of federal procedural rules, not state statutes, federal courts construe "harassment" to have its legal meaning to avoid violating the First Amendment. *See CrossFit Inc. v. Martin,* No. 2:14-CV-02277-PHX-JJT, WL 4236968 (D. Ariz. Sept. 22, 2017) ("[T]he 'improper purpose' inquiry subsumes

the 'frivolousness inquiry' when applied to the filing of complaints. In other words, 'complaints are not filed for an improper purpose if they are non-frivolous.'"). Here, the anti-surplusage canon forecloses that option as *Richer* explained. And when deciding whether the First Amendment protects activities related to court petitioning, "proof of a lawsuit's objective baselessness is the 'threshold prerequisite': a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless." *White v. Lee*, 227 F.3d 1214, 1233 (9th Cir. 2000). In sum, court petitioning activity described in 12-3201(E)(1)(a) falls under the Petition Clause's conjunctive safeguards.

A.R.S. § 12-3201(E)(1)(b) ("Unreasonably expanding or delaying court proceedings") inadequately harkens to the improper purpose of "delay" but does not reach conduct which falls outside the Petition Clause. A litigant who conducts himself "unreasonably" demonstrates nothing more than negligent "conduct incidental to a petition" which the Petition Clause safeguards. Rather than acting negligently during the course of litigation, a litigant must be "subjectively motivated by an improper purpose" as part of an "objectively baseless" suit to run afoul of the First Amendment. The "conduct incidental to a petition" described in 12-3201(E)(1)(b) falls under the Petition Clause's conjunctive safeguards.

A.R.S. § 12-3201(E)(1)(d) ("Engaging in abuse of discovery or conduct in

31

discovery that has resulted in the imposition of sanctions against the pro se litigant"). Once more, this provision does not consider the case's objective merits as a preliminary condition. Further, the provision does not prohibit or regulate any subjectively motivated improper purpose. The provision merely, and unconstitutionally, holds that sanctionable conduct within the course of litigation can be converted into a vexatious litigation designation with an accompanying permanent blanket injunction on court petitioning. The First Amendment does not tolerate such statutory prohibitions or regulations. The conduct described in 12-3201(E)(1)(d) falls under the Petition Clause's conjunctive safeguards.

A.R.S. § 12-3201(E)(1)(e) ("A pattern of making unreasonable, repetitive and excessive requests for information"). Again, this provision does not consider the case's objective merits as a preliminary condition, and does not prohibit or regulate any subjectively motivated improper purpose. All negligently (i.e., "unreasonably") performed conduct described in 12-3201(E)(1)(e) falls under the Petition Clause's conjunctive safeguards.

A.R.S. § 12-3201(E)(1)(f) ("Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation"). Likewise, this provision does not consider the case's objective merits as a preliminary condition, and does not prohibit or regulate any subjectively motivated improper purpose. The conduct described in 12-3201(E)(1)(e) falls

squarely under the Petition Clause's conjunctive safeguards.

At bottom, "[i]n every application", the *Moody* "activities ... that [§§ 12-3201(E)(1)(a)-(f)] prohibit or otherwise regulate" are <u>all</u> Sosa "activities which must be protected" under the Petition Clause's conjunctive scope which safeguards all petitioning activity unless the underlying suit is "both objectively baseless and subjectively motivated by an improper purpose". The statute therefore "lacks a plainly legitimate sweep".

As an additional check for overbreadth, every pro se litigant has *Noerr-Pennington* immunity against all §§ 12-3201(E)(1)(a)-(f) allegations. "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct. ... [The] doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 929-31; *White*, 227 F.3d at 1239 ("The *Noerr-Pennington* doctrine sharply limits [Government] officials' ability to treat [] state-court lawsuit[s] as a possible violation of [civil or criminal] law"). The U.S. Supreme "Court... extended *Noerr-Pennington* immunity to the use of 'the channels and procedures of state ... courts.'" *Sosa*, 437 F.3d at 929. For reasons stated, pro se litigants can defeat every A.R.S. § 12-3201(A) motion by asserting *Noerr-Pennington* immunity as an affirmative defense. *See 360 Mortg.*

*Grp., LLC v. Fortress Inv. Grp. LLC,* No. 19-CV-8760, 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020) ("The *Noerr-Pennington* doctrine is generally raised as an affirmative defense.").  "To determine whether a [litig]ant's conduct, ..., is immunized under *Noerr-Pennington,* we apply a three-step analysis to determine: (1) 'whether the lawsuit imposes a burden on petitioning rights,' (2) 'whether the alleged activities constitute protected petitioning activity,' and (3) 'whether the statute[] at issue may be construed to [avoid] that burden.'  If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 536 (9th Cir. 2022).  Meeting that first step, any § 12-3201(A) motion that might result in a "finding that a lawsuit was illegal 'is a burden'".  *Sosa*, 436 F.3d at 930.  The "focus at step two" is on whether any "alleged" A.R.S. § 12-3201(E)(1)(a)-(f) violation would qualify as "*protected* petitioning activity" not subject to the "sham" litigation exception. *B&G Foods*, 29 F.4th at 536 (emphasis original); *Sosa*, 437 F.3d at 933.  Per *Richer* and *BE & K*, every § 12-3201(E)(1)(c) violation alleged cannot consider any subjective motives or improper purposes, while every other alleged § 12-3201(E)(1) provision violation would involve motives or purposes "[un]moored" to the case's objective merits, meaning all possible "alleged activities" would, in every instance, be "protected petitioning activities" in the form of core "petitioning activity" or "conduct incidental to a petition".  Moving to third step, the *Noerr-*

*Pennington* doctrine immunizes every instance of A.R.S. § 12-3201(E)(1)(a)-(f) "vexatious conduct" because, per *Richer*, each provision can be, and has been, "construed to [avoid] that [First Amendment] burden". *B&G Foods*, 29 F.4th at 536. All three steps required to demonstrate *Noerr*-Pennington immunity are satisfied in every possible application of the challenged statute. Every self-represented litigant who could be accused of engaging in "vexatious conduct" via a § 12-3201(A) motion is entitled to *Noerr-Pennington* immunity. A.R.S. § 12-3201 is "patently unconstitutional". *Saenz v. Roe,* 526 U.S. 489, 499 n.11 (1999) ("If a law has no other [demonstrable] purpose ... than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it is patently unconstitutional.").

### ii. A.R.S. § 12-3201(E) Violates The Petition Clause At Least In A Substantial Number of Applications

Plaintiff also factually, not speculatively, demonstrated via court records that, in a conservative calculation, 85% of the statute's applications resulted in orders which violated the Petition Clause; a "substantial number" sufficient to find the law unconstitutional. (2-ER-312-313). The number is not 100% only because, in a handful of cases, judges incidentally found co-occurring §§ 12-3201(E)(1)(a) *and* (c) violations but declined to enter the requisite § 12-3201(B) blanket injunction. Orders compliant with the Petition Clause only resulted from judges

35

who violated the § 12-3201(B) requirement after encountering litigants who (unwittingly) failed to invoke the *Noerr-Pennington* doctrine as a defense.

b. A.R.S. §§ 12-3201(E)(1)(a), (c), and (f) Violate The Vagueness
Doctrine

"When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1149-50 (9th Cir. 2001). Indeed, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP* v. *Button,* 371 U.S. 415, 433 (1963). Of note, "[a]s the overbreadth doctrine has developed, it has 'almost wholly merged' with the vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'" *Sineneng-Smith,* 590 U.S. at 381. Thus, it stands to reason that an overbroad statute is also overly vague, and A.R.S. § 12-3201 is overbroad. Indeed, in a different case involving Attorney General Mayes, the Ninth Circuit recently affirmed another piece of Arizona legislation was "unconstitutionally vague" for not defining "harassment" in a law which impermissibly allowed private persons and state officials to "collectively" threaten incarceration for First Amendment activities. *See Am. Encore,* 152 F.4th at 1119-20. As Plaintiff similarly alleges, the lack of any § 12-3201(E)(1)(a)

definition of "harassment", along with general imprecision around language contained in §§ 12-3201(E)(1)(c) and (f) renders those provisions void for vagueness.

### c. A.R.S. § 12-3201(B) Is Not Narrowly Tailored

All forms of "[i]njunctive relief must be tailored to remedy the specific harm alleged." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2003). It matters not whether that "injunctive relief" arises from a judicial authority or a statutory authority. Appellant is presently subject to three injunctions – a judicial injunction he does *not* challenge, an administrative injunction (Administrative Order 2023-159) he did not know existed until this litigation commenced, and the § 12-3201(B) statutory injunction prohibiting him from exercising his petitioning rights absent prior government approval.

Plaintiff takes issue with § 12-3201(B). On its face, that provision is not narrowly tailored. Rather, it is a blanket provision applied to those who engaged in "vexatious conduct", yet the First Amendment protects every activity that § 12-3201(E)(1)(a)-(f) prohibits or otherwise regulates. Furthermore, the state can have no legitimate interest in regulating First Amendment activities outlined in § 12-3201(E)(1)(a)-(f). While the Ninth Circuit has affirmed "the state has an interest in protecting defendants from harassment by frivolous litigation", *George*, 486 F.3d at 1126, no § 12-3201(E)(1)(a)-(f) provision captures "harassment by frivolous

litigation". The state can have no legitimate interest in conduct those provisions do capture. For instance, the state has no interest in protecting litigants from "harassment by [non]frivolous litigation" since no such harassment legally exists. And the state can have no interest in protecting litigants from "frivolous litigation" not subjectively motivated by an improper purpose.

Any statute which reaches or regulates First Amendment rights must be "narrowly tailored" to justifiably serve a "compelling" or "substantial" legitimate "government interest". *U.S. v. O'Brien*, 391 U.S. 367, 377 (1968) ("We hold that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers a[] [compelling] or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."); *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) ("[A] restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest.'"). At bottom, A.R.S. § 12-3201(B) is not narrowly tailored, and certainly is not narrowly tailored to serve any legitimate government interest.

### d. A.R.S. § 12-3201 Violates Due Process

Finally, nowhere in the statute does it require a state court to conduct an evidentiary hearing or provide any form of procedural due process that would

38

provide a procedural safeguard for Arizonans' First Amendment rights. The First and Fourteenth Amendments require that due process.

### 2. Factor Two: Irreparable Injuries

"The loss of [and threats to] First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo,* 592 U.S. 14, 19 (2020). "'Irreparable harm is relatively easy to establish in a First Amendment case' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'" *Fellowship of Christian Athletes,* 82 F.4th at 694-95. Plaintiff presents a "colorable First Amendment claim" that the enforcement and operation of A.R.S. § 12-3201 abridges, impermissibly prohibits or otherwise regulates, and chills constitutionally protected activities in the form of core court petitioning and conduct incidental to a petition. Plaintiff is threatened with, and currently experiences, various ongoing irreparable injuries. Factor Two is met.

### 3. Factors Three and Four: The Balance of Equities Tip Sharply In Plaintiff's Favor, While An Injunction Is In The Public's Interest

"Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – 'merge.'" *Id* at 695. Both "the balance of equities" and "the public interest" independently favor granting injunctive relief. *Winter*, 555 U.S. at 20.

Government defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012). "[B]y establishing a likelihood that [the challenged statute] violates the U.S. Constitution, Plaintiff[] ha[s] also established that both the public interest and the balance of the equities favor [injunctive relief]." *Ariz. Dream Act Coal.*, 757 F.3d at 1069. Factors Three and Four tip sharply in Plaintiff's favor.

### 4. Summary

Appellant raises a "colorable First Amendment claim" against the Attorney General. He is "likely to succeed on the merits" and raises "serious questions" going to those merits. The Court should reverse the denial of injunctive relief.

### II. The District Court Erred When It Denied Injunctive Relief Involving Presiding Judge Pamela Gates

Presiding Judge Gates claimed absolute judicial immunity, contended she had sovereign immunity, and called to "*Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021)" to float an Article III "case or controversy" jurisdictional defense. She made little effort to develop those defenses, and never argued that the First Amendment facial challenge lacks merit. Regardless, "case or controversy", sovereign immunity, and judicial immunity defenses all go to the common

underlying question of whether a Presiding Judge acts in an administrative capacity or in a judicial capacity when issuing administrative orders and making administrative decisions. Dispositively answering this question, the Arizona Supreme Court established that, when exercising their appointed office's authorities and power, Presiding Judges act exclusively in an administrative capacity and possess no authority to act in a judicial capacity.

A. The Arizona Supreme Court Has Spoken; Federal Courts Must Abide

"Article VI § 11 of the Arizona Constitution sets forth the powers of the [P]residing [J]udge." *Dann,* 157 Ariz. at 400. "The state constitution grants the [Arizona] supreme court 'administrative supervision over all the courts of the State.' Ariz. Const. art. 6, § 3. The [state] supreme court has authorized each county's presiding judge to 'exercis[e] general administrative supervision over the court and the judges thereof'. ... Administrative '[c]onnotes of or pertains to administration, especially management, as by managing or conducting, directing, or superintending, the execution, application or conduct of persons or things. Particularly, having the character of *executive* or ministerial action. In this sense, *administrative functions or acts are distinguished from such as are judicial*.' *In re Shannon,* 179 Ariz. 52, 76, [] (1994)". *Clark v. Campbell,* 219 Ariz. 66, 71 ¶ 20 (App. 2008) (emphasis added). Presiding Judges' administrative powers are confined to the power to "manag[e] the conduct of [elected, appointed, and hired]

court personnel", *Id*, to manage "its own officers" of the court (i.e. attorneys), *State ex rel. Andrews v. Superior Court,* 39 Ariz. 242, 248 (1931), and to manage court facilities and resources per Rules of the Arizona Supreme Court 92(a). Their "'administrative authority' does *not* include 'authority over' private parties'" since neither the Arizona Constitution nor the Arizona Supreme Court gave Presiding Judges jurisdictional "authority to compel persons outside the judiciary to" do, or to refrain from doing, anything. *Dann,* 157 Ariz. at 400 (emphasis added). Put another way, when acting in the capacity of their office, Presiding Judges lack judicial power to issue summons, enforce subpoenas, enter orders compelling litigants' action or inaction, grant any form of judicial relief, or even hear or decide any controversy. Indeed, the Arizona Supreme Court held it would be constitutionally, statutorily, and procedurally "inappropriate" for a Presiding Judge to conduct any form of "adversarial" proceeding or associated task.[7] *Tinney,* 183

---

[7] Arizona's constitution and procedural rules require a Presiding Judge to, in essence, "take off the cap" of their appointed office and formally be assigned to a case as an everyday judicial officer in order to possess authority to act in a judicial capacity. In Arizona, these steps guarantee notice to litigants to give them an opportunity to request a change of judge as a matter of right. *See* Ariz. R. Civ. P. 42.1 ("In any action in superior court, ..., each side is entitled as a matter of right to a change of one judge."). "In civil and criminal matters we have long adhered to the notion that a party may disqualify one judge and have the case transferred to another judge. There is no procedure for change of judge in an administrative proceeding before the presiding judge. As we view the situation, such a procedure is not necessary because the presiding judge has *no authority* to compel persons outside the judiciary to become involved in such matters." *Dann,* 157 Ariz. at 400-01 (emphasis added).

Ariz. at 414. And while each state may establish their own general court procedures, the U.S. Constitution requires states to follow an "adversarial system of adjudication" for the substantive redress of grievances through those courts. *Sineneng-Smith,* 590 U.S. at 375. Perhaps that is why the Arizona Legislature statutorily restrained the judicial branch, on top of the state constitution's inherent restraints, to ensure administrative authorities and power could never be deployed to affect substantive rights.[8] *See* A.R.S. § 12-109(B)(1) ("[A]dministrative orders shall not do any of the following: 1. Abridge, enlarge or modify substantive rights of a litigant."). At bottom, when a Presiding Judge exercises her office's authority, the Arizona Supreme Court has established that she exclusively acts in an administrative capacity, meaning Appellant may bring action against Presiding Judge Gates.

### 1. There Is No Sovereign Immunity

"Since [Appellant] sued [Pamela Gates] in [her] administrative capacity as [Presiding Judge], we conclude that dismissal [for sovereign immunity] is not warranted". *Wolfe v. Strankman*, 392 F.3d 358, 365-66 (9th Cir. 2004). The Ninth

---

[8] Arizona's constitution broadens and zealously safeguards First Amendment rights perhaps more than any other state. *See e.g.*, *Brush & Nib Studio, LLC v. City of Phoenix*, 247 Ariz. 269, 281 ¶¶ 45-47 (2019) ("Whereas the First Amendment is phrased as a constraint on government ... our state's provision, by contrast, is a guarantee of the individual right"). Indeed, Arizona's founders framed the right to petition courts as an absolute such that "[t]he right of petition, ..., shall never be abridged." Ariz. Const. art. 2, § 5.

Circuit decided this precise issue in Appellant's favor. It is of no moment that a judicial administrator with administrative power to administratively enforce a statute also happens to be a judge. To trigger the *Ex Parte Young* exception, "[a]ll that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." *Matsumoto,* 122 F.4th at 803. This is a "low bar", *Id*, that Appellant easily clears.

## 2. There Is No Judicial Immunity

"[A]bsolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, ... functions that judges may on occasion be assigned to perform." *Duvall*, 260 F.3d at 1134; *Forrester v. White,* 484 U.S. 219, 227 (1988) ("Judicial immunity only applies to judicial acts."). Presiding Judge Gates has no judicial immunity for two reasons. First, a Presiding Judge acting in her official capacity performs administrative acts, not judicial acts, and "a judge is not immune from liability for nonjudicial actions, i.e*.,* actions not taken in the judge's judicial capacity." *Mireles,* 502 U.S. at 11. Second, the Arizona Supreme Court in *Dann, Shannon*, and *Tinney* affirmed that Presiding Judges have no jurisdictional authority to engage in judicial acts when exercising the power of their administrative office, and "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12. State law determines whether a state judge acts in a judicial capacity or in some

other capacity. *See Forrester* 484 U.S. at 230 (determining judicial immunity did not apply "[u]nder Virginia law"). Under Arizona law, as the Arizona Supreme Court interpreted it, Presiding Judges (1) act exclusively in an administrative capacity when exercising the authorities and power of their office; and (2) lack all personal jurisdiction over private parties, and lack all subject matter jurisdiction over any and every adversarial matter. In sum, each action a Presiding Judges takes through their appointed office classifies as an act taken in an administrative capacity, not a judicial capacity, while there is a "clear absence of all jurisdiction" to act in a judicial capacity whenever Presiding Judges exercise their offices' authorities and powers. "[F]ederal court[s] [are] bound by the decision[s] of the highest state court", *In re Kirkland,* 915 F.2d at 1238, including on matters involving the nature and inherent limits of actions a Presiding Judge has the authority to perform under state law.

B. There Is A "Case or Controversy"; Article III Jurisdiction Is Satisfied

In her dismissal motion, Presiding Judge Gates wrote, "'[j]udges exist to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation.'" (2-ER-254-264). She emphasized "*Ex Parte Young* did not countenance an injunction against a state court or its machinery." *Whole Woman's Health* did not break new legal ground, but only reiterated points made more than a century earlier in *Ex*

*Parte Young*.  Those points being that, to safeguard "the whole scheme of our Government", federal courts have no Article III authority to enjoin state court judges or personnel from acting in their respective judicial or quasi-judicial capacity.  *Whole Woman's Health*, 595 U.S. at 40.  This did nothing more than re-affirm state sovereignty where "in *Ex parte Young,* this Court recognized a narrow exception grounded in traditional equity practice – one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law."  *Id*.  Questions of Federalism asking whether a federal suit would impact a state court's "machinery" can be answered by examining the named defendant and the relief requested.  Again, a state court judge can be brought to suit provided their pertinent acts are non-judicial and the requested relief does not seek to enjoin state judicial operations.  *Forrester*; *Looney v. Tierney*, 776 F. Supp. 3d 868 (D. Mont. 2025).  A federal plaintiff may sue a state court judge who holds an administrative position provided the judge is named in their administrative capacity, the judge's administrative acts are pertinent to the claim, and the requested relief does not affect the state court's general functions.  *Strankman*, 392 F.3d at 365-66.  Here, Appellant expressly brought action against Presiding Judge Gates "in her official administrative capacity" seeking prospective declaratory relief and injunctive relief enjoining administrative enforcement of a statute challenged for violating the

Petition Clause.  He does not seek to undo any judicial order, and his suit has no effect on the judicial "machinery".[9]  These dynamics fit the *Ex Parte Young* exception, meaning there is an Article III "case or controversy ... arising between adverse litigants".  *Whole Woman's Health*, 595 U.S. at 39-40.

### C. Injunctive Relief Is Warranted

The Presiding Judge has never challenged the merits of Plaintiff's First Amendment claim.  The statute is unconstitutional.  Injunctive relief is warranted. This Court should reverse the district court's decision.

## CONCLUSION

This case involves a matter of considerable public concern where the Arizona Attorney General threatens Appellant with civil and criminal prosecution for engaging in First Amendment petitioning and conduct incidental to petitioning in civil cases that potentially further expose a Medicaid fraud scheme involving a state legislator , and which only ceased once Appellant brought the scheme to light, as was his right under the Petition Clause.  A.R.S. § 12-3201 is a state statute

---

[9] Appellant sits in a similar position to the *Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004) plaintiff who found himself subject to a state judicial order and an administrative order arising from a common piece of state legislation.  He challenged that legislation on First Amendment grounds.  Maldonado did not challenge the judicial order, and he did not request relief that would enjoin the judicial machinery.  This Court identified an Article III "case or controversy", allowed Maldonado to proceed with his First Amendment claim, and found the *Rooker-Feldman* doctrine did not apply.  Likewise, Appellant only challenges A.R.S. § 12-3201, and §§ 12-3201(B) and (E) in particular.

which patently violates the First Amendment and is being weaponized. Appellant brings a colorable First Amendment claim, suffers actual irreparable injuries resulting from an administrative order, and suffers imminent irreparable injuries sufficient to warrant preliminary injunctive relief. The Court erred not to grant that relief. The Court should reverse the district court's decision.

Respectfully submitted this 16th day of January 2026.

/s/ Phillip Potter
Phillip Potter
Pro Se
Appellant – Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the

foregoing document with the Clerk of the United States Court of Appeals for the

Ninth Circuit by using the circuit's ACMS system.  Appellant also sent opposing

counsel PDF copies of the attached documents / filings via email.

<u>/s/ Phillip Potter</u>

CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitation of Fed. R. App. P. 32 because it contains 11,097 words and does not exceed 50 pages.  This reply complies with the typeface and the type style requirements of Fed. R. App. P. 32as because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman typeface.

<u>/s/ Phillip Potter</u>